### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DIANE CONNELLY, | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:20cv1060 (JCH) |
| v. | : | |
| | : | |
| MICHAEL KOMM, ET AL., | : | NOVEMBER 16, 2021 |
| Defendants. | : | |

## RULING RE: DEFENDANTS' MOTION TO DISMISS (DOC. NO. 12)

### I.    INTRODUCTION

Plaintiff Diane Connelly ("Connelly") brings this action under section 1983 of the United States Code as well as Connecticut state law against defendants Michael Komm ("Komm"), Hector Irizarry ("Irizarry"), and the Town of Fairfield ("Fairfield"). Connelly alleges violations of her rights arising from her 2017 arrest at a car dealership.

Before this court is the defendants' Motion to Dismiss the Complaint (Doc. No. 12) which the plaintiff opposes.  For the reasons set forth below, the court grants the Motion to Dismiss as to Count Two of the Complaint and denies the remainder of the Motion.

### II.    BACKGROUND

A.    <u>Factual Background</u>[1]

Connelly's claims arise from her arrest at Miller Nissan, a car dealership in Fairfield, Connecticut.  A long-time customer of Miller Nissan, Connelly leased a car

---

[1] The facts in this section are drawn from the Complaint.  <u>See</u> Compl. (Doc. No. 1).  Because, at the motion to dismiss stage, the court must accept all factual allegations in the Complaint as true, "we describe the facts as alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, and construing any ambiguities in the light most favorable to upholding the plaintiff's claim."  <u>Sung Cho v. City of New York</u>, 910 F.3d 639, 642 n.1 (2d Cir. 2018) (internal quotation marks and citations omitted).

from the dealership.  Eventually, she returned that car and began to lease another.

When she swapped cars, however, Nissan failed to credit her for the return of the first

vehicle, resulting in a $14,000 charge to Connelly.  Connelly tried for months to resolve

the issue, ultimately returning to the dealership on July 19, 2017.  While Connelly was

speaking with staff at the dealership, employee Gregg Miller ("Miller"), grabbed her

keys, threw her purse across the showroom, and pushed her before taking her by the

arm and leading her out of the building.

Outside of the building, Defendants Komm and Irizarry, who were on the scene,

questioned Connelly, who told them that Miller had assaulted her.  The officers then

turned to Miller, who told them that he had pushed Connelly.  According to Connelly, the

parties "disagreed with one another on the details", but both agreed that Miller had

assaulted her.  See Compl. at ¶ 25.  Nonetheless, the officers arrested Connelly,

charging her with criminal trespass in the first degree and interfering with an officer.

Conn. Gen. Stat. §§ 53a-107 & 53a-167a.  On July 28, 2017, a nolle prosequi was

entered on Connelly's criminal charges.

B.    Procedural Background

Connelly filed her Complaint against the defendants on July 27, 2020.  See

Compl. (Doc. No. 1).  She brings five Counts, alleging false arrest, unreasonable force,

and malicious prosecution in violation of her Fourth and Fourteenth Amendment rights

in Count One.  In Count Two, which she brings against Fairfield, she alleges that the

town is liable under section 1983 of title 42 of the United States Code.  Counts Three,

Four, and Five allege assault, battery, unlawful detention, and intentional infliction of

emotional distress against Komm and Irizarry under Connecticut state law.

In response, the defendants filed a Motion to Dismiss on the grounds that Connelly failed to timely serve the Complaint; the claims against Fairfield in Count Two lack sufficient factual allegations; and the excessive force, false arrest, and municipal liability claims are time barred.  <u>See</u> Mot. to Dismiss ("Mot.") (Doc. No. 12).  The plaintiff opposes this Motion.  <u>See</u> Pl.'s Opp'n (Doc. No. 21).

On April 23, 2021, the Court issued a Ruling granting Connelly time, <u>nunc pro tunc</u>, to serve the defendants.  <u>See</u> Ruling (Doc. No. 18).

## III.   LEGAL STANDARD

C.    <u>12(b)(6)</u>

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor.  <u>See La Liberte v. Reid</u>, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." <u>Iqbal</u>, 556 U.S. at 678.

**IV.     DISCUSSION**

    A.     <u>Failure to Timely Serve</u>

The first ground upon which the defendants move to dismiss, failure to timely serve, is terminated as moot.  The court reluctantly granted plaintiff <u>nunc</u> <u>pro</u> <u>tunc</u> time to serve the defendants in its April 23, 2021 Ruling.  <u>See</u> Ruling.

    B.     <u>Count Two: Monell Claim</u>

The defendants move to dismiss Count Two on the ground that it fails to state a claim against the Town of Fairfield.  In Count Two, Connelly alleges that "a municipal policy or custom exists in the defendant Town of Fairfield", Compl. at ¶ 43, which "has caused the plaintiff to be subjected" to a denial of her rights.  Compl. at ¶ 44.

To properly bring such a claim, commonly known as a <u>Monell</u> claim, plaintiffs must allege sufficient facts to plausibly: (1) "establish that [they] suffered a constitutional violation," and; (2) establish "that the violation resulted from an identified municipal 'policy,' 'custom,' or 'practice.'" <u>Parker v. City of Long Beach</u>, 563 Fed. App'x 39, 41 (2d Cir. 2014) (citing <u>Monell</u>, 436 U.S. at 690-91 (1978).   "<u>Monell</u> also recognizes liability where a municipality's failure to train its employees . . . amount[s] to deliberate indifference to the rights of persons with whom the untrained employees come into contact." <u>Parker</u>, 563 F. App'x at 41 (quoting <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011)).

A policy, custom, or practice "need not be memorialized in a specific rule or regulation." <u>Kern v. City of Rochester</u>, 93 F.3d 38, 44 (2d Cir. 1996) (internal quotations and citation omitted).  Nor must it have "received formal approval through the body's official decisionmaking channels." <u>Monell</u>, 436 U.S. at 691. A <u>Monell</u> claim may still succeed when the constitutional violations are so "persistent and widespread . . . so

4

permanent and well settled" that they "constitute a 'custom or usage' with the force of law." Sorlucco v. New York City Police Dep't., 971 F.2d 864, 870-71 (2d Cir. 1992) (internal quotations and citations omitted).  However, "the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995).

Here, Connelly fails to allege that any violation of her rights occurred pursuant to a policy, custom, or practice of the Town of Fairfield.  Indeed, Count Two contains only conclusory allegations that any such policy, custom, or practice existed.  See Compl. at ¶ 44 ("the actions and conduct of the defendant Town of Fairfield evidence an official policy or custom . . . .").  Nowhere in the first forty-six paragraphs of the Complaint,[2] all of which are incorporated into Count Two, does Connelly allege any facts plausibly supporting a claim that the violations she has alleged are "persistent" or "widespread" in the Town of Fairfield.  See, e.g., Sorlucco, 971 F.2d at 870-71.  To the contrary, the only facts offered relate to the actions of the two officer defendants and their arrest of Connelly.  There are no facts alleged that could plausibly support a Monell claim.

---

[2] The Complaint contains four paragraphs numbered "1.-41.", five paragraphs numbered "42", four paragraphs numbered "43", two paragraphs numbered "44", two paragraphs numbered "45", and two paragraphs numbered "46."  As one might imagine, this numbering scheme complicates the citations in this Ruling.  In the future, the court would be greatly aided by a complaint that takes a more sensible approach to numbering paragraphs and adheres to the requirements of Federal Rule of Civil Procedure 10. See Fed. R. Civ. P. 10 ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."). If plaintiff's counsel again submits a pleading that fails to comply with the Federal Rules of Civil Procedure, the court intends to impose monetary sanctions.

Because the plaintiff has failed to plead facts sufficient to assert a <u>Monell</u> claim, the defendants' Motion to Dismiss is granted as to Count Two. The court dismisses this claim without prejudice should Connelly choose to replead.

C.    Timeliness of Claims

The final ground of defendants' Motion to Dismiss is that the plaintiff's false arrest and unreasonable force claims in Count One as well as her <u>Monell</u> claims in Count Two are untimely. Connelly brings these claims under section 1983 of title 42 of the United States Code.

Because section 1983 has no federal statute of limitations, courts borrow the "most analogous" state statute of limitations. <u>Board of Regents v. Tomanio</u>, 446 U.S. 478, 488 (1980). The statute of limitations for claims in Connecticut under section 1983, which courts borrow from Connecticut's personal injury statute, is three years. <u>See</u> <u>Lounsbury v. Jeffries</u>, 25 F.3d 131, 134 (2d Cir. 1994); <u>see also</u> Conn. Gen. Stats. § 52-577. Not only do courts borrow state limitations periods, but they also use state "tolling rules" in section 1983 cases. <u>Pearl v. City of Long Beach</u>, 296 F.3d 76, 80-81 (2d Cir. 2002) (citing <u>Tomanio</u>, 446 U.S. at 484-86). The Second Circuit has held that, "[b]ecause the Supreme Court wanted section 1983 actions to be subject to state 'tolling rules,' both statutory and common law rules are to be borrowed." <u>Id.</u> at 81. However, courts should not apply state tolling rules if doing so would "defeat the goals" of section 1983. <u>See</u> <u>Abbas v. Dixon</u>, 480 F.3d 636, 641 (2d Cir. 2007). Here, Connelly's arrest took place on July 19, 2017, and she failed to file her Complaint until July 27, 2020. The claims for false arrest and excessive use of force therefore appear untimely on their face, because they were brought outside the relevant three-month period.

6

Connelly argues, though, that her claims are timely because Governor Lamont suspended Connecticut statutes of limitations between March 2020 and March 2021 in response to the COVID-19 pandemic.  See Executive Order No. 7G (March 19, 2020), CT.GOV, https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-7G.pdf ("Exec. Order 7G"); Executive Order No. 10A (February 8, 2021), CT.GOV, https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-10A.pdf ("Exec. Order 10A"). [3]  The defendants contend that the Governor's Executive Order does not apply to toll the statute of limitations for claims under section 1983.  See Defs.' Mem. of Law at 6-8 (Doc. No. 12-1).

In borrowing state limitations periods and tolling rules, the Supreme Court has explained, federal courts "rely[ ] on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim." Tomanio, 446 U.S. at 486 (emphasis added) (internal citations omitted).  Such state-determined "exceptions" need not be statutory in nature; in Pearl, the Second Circuit considered the "scope of borrowed tolling rules", determining that "both statutory and common law rules" constitute "tolling rules" that should be borrowed.  Pearl, 296 F.3d at 81.  Governor Lamont's Executive Order 7G, which "suspend[ed] . . . all statutory . . . time requirements, statutes of limitation, or other limitations or deadlines relating to service of process, court proceedings, or court filings", likewise served as a state "tolling rule",

---

[3] The court takes judicial notice of the State of Connecticut's online copy of the Governor's Executive Orders.  See Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

carving out an exception to the prosecution of state personal injury claims analogous to 1983 actions.  Exec. Order 7G.  Thus, Executive Order 7G tolled the three-year statute of limitations for Connelly's claims unless such tolling would "defeat the goals" of section 1983.  See Abbas, 480 F.3d at 641.

The policies underlying section 1983 include "compensation of persons injured by deprivation of federal rights" and "prevention of abuses of power by those acting under color of state law." Robertson v. Wegmann, 436 U.S. 584, 590-91 (1978); see also Tomanio, 446 U.S. at 488 (identifying two of the principal policies embodied in section 1983 as "deterrence and compensation").  "Considerations of federalism" are also "quite appropriate in adjudicating federal suits based on 42 U.S.C. § 1983." Tomanio, 446 U.S. at 492.

Applying Executive Order 7G to Connelly's section 1983 claims bolsters the policy aims of section 1983.  By allowing these claims to proceed, the state tolling rule grants Connelly her day in court to seek compensation for her alleged constitutional deprivation.  Likewise, permitting the claims to go forward furthers the goal of deterring abuses of power by state officials, requiring the defendants to answer for the alleged rights violations.  Finally, borrowing the tolling rule established in Governor Lamont's Executive Order comports with principles of federalism, as the court will apply Connecticut's state tolling policy rather than adopting its own "ad hoc federal rule" interpreting state law.  See, e.g., id.

In support of their position that the Executive Order does not toll the three-year limitations period, the defendants cite a number of cases, all of which are distinguishable.  See Defs.' Mem. at 7-8, Defs.' Reply at 3-5.  Two of the cases upon

8

which they rely address equitable tolling doctrines rather than tolling by executive order.

See Dragoman v. Midwest Hose & Specialty, Inc., No. 19-CV-01581-RBJ, 2020 WL

7043864, at *3 (D. Colo. Dec. 1, 2020) (determining that the court would not apply

equitable tolling principles to toll state law statutes of limitation in a diversity case); Hood

v. Cath. Health Sys., Inc., No. 1:20-CV-673, 2020 WL 8371205, at *5 (W.D.N.Y. Sept.

28, 2020) (refusing to apply equitable tolling principles to toll state statutes of limitations

applicable under the Federal Tort Claims Act).  The remainder of the cases the

defendants cite are Initial Review Orders that do not discuss Governor Lamont's

Executive Order.  See Goins v. Papoosha, No. 3:21-CV-00405 (VAB), 2021 WL

1600720 (D. Conn. Apr. 23, 2021); Rivera v. Erfe, No. 3:21CV316(KAD), 2021 WL

1601147 (D. Conn. Apr. 23, 2021); Ruiz v. Taranovich, No. 3:20-CV-316 (SRU), 2021

WL 1969730, at *1 (D. Conn. May 5, 2021).  There is no indication whatsoever that the

courts considered the impact of the Executive Order's tolling rule on the plaintiffs' claims

in these cases.  Thus, the defendants' cited cases do not support the contention that

7G's tolling provision does not apply to Connelly's claims.

By contrast, at least two district courts in this Circuit have found that executive

orders enacted in response to the COVID-19 pandemic do toll borrowed state statutes

of limitations.  See Bonilla v. City of New York, No. 20CV1704RJDLB, 2020 WL

6637214, at *3 (E.D.N.Y. Nov. 12, 2020) (holding that a magistrate judge's decision to

apply former Governor Cuomo's Executive Order tolling New York statutes of limitations

during the COVID-19 pandemic to a plaintiff's section 1983 claims was not clearly

erroneous or contrary to law); Citi Connect, LLC v. Loc. Union No. 3, Int'l Brotherhood of

Elec. Workers, AFL-CIO, No. 20-cv-05147 (CM), 2020 WL 5940143, at *4 (S.D.N.Y.

Oct. 7, 2020) (holding that the court should "borrow the 'arguably tolled' [New York] state statute of limitations" for a federal action under the Labor Management Relations Act).  This court will follow the lead of its sister courts, borrowing the tolling provision set forth in Executive Order 7G.

Because the Executive Order tolls Connelly's claims under section 1983, the court denies the defendants' Motion to Dismiss Connelly's claims in Count One on the grounds of a lack of timeliness.[4]

## V.   CONCLUSION

For the reasons stated above, the court grants the defendants' Motion to Dismiss (Doc. No. 12) as to Count Two of Connelly's Complaint against the Town of Fairfield. Count Two is dismissed without prejudice to replead.  If the plaintiffs choose to amend their Complaint, the court grants them leave to do so within 14 days of this Ruling.  The court denies the remainder of the defendants' Motion to Dismiss, allowing the plaintiff's claims in Count One and Counts Three through Five to proceed.

**SO ORDERED.**

Dated at New Haven, Connecticut this 16th day of November 2021.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[4] While the court has dismissed Connelly's Monell claims in Count Two of her Complaint for failure to state a claim, see pp. 4-5, supra, the three-year statute of limitations for these claims under section 1983 is likewise tolled by Executive Order 7G.